VICTORIA NOBLE (SBN 337290)
tori@eff.org
KIT WALSH (SBN 303598)
kit@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CENTERS FOR MEDICARE & MEDICAID SERVICES,<br><br>Defendant. | **COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552** |

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for injunctive and other appropriate relief. Plaintiff seeks the release of records requested from defendant U.S. Centers for Medicare & Medicaid Services ("CMS"), arising out of a FOIA request filed on January 29, 2026. Specifically, Plaintiff seeks the disclosure of records pertaining to CMS's Wasteful and Inappropriate Service Reduction ("WISeR") Model. The WISeR Model uses artificial intelligence ("AI") to evaluate prior authorization claims.

2. Healthcare experts, care providers, and lawmakers have raised alarm that the Model may cause serious harm to patients by relying on AI to make important coverage decisions, potentially without the safeguards necessary to do so safely. Despite this widespread criticism, the Model has been used in six states since January 1, 2026. But it remains unclear

whether this program includes meaningful safeguards against algorithmic bias, privacy violations, and wrongful denials of care.

3. The public currently lacks the information necessary to assess whether the program adequately addresses these serious risks. Accordingly, Plaintiff requires information to determine whether the WISeR Model risks subjecting patients to unwarranted and even discriminatory delays or denials of necessary medical care.

4. The requested records will likely reveal this crucial information.

## PARTIES

5. Plaintiff Electronic Frontier Foundation ("EFF") is a not-for-profit organization. Its principal place of business is in San Francisco, California. EFF informs the public, the press, and lawmakers about civil liberties and technology issues and defends those liberties. To support its mission, EFF uses FOIA to obtain and publish information about the activities of federal agencies. EFF is a "person" within the meaning of 5 U.S.C. § 551(2).

6. Defendant U.S. Centers for Medicare and Medicaid ("CMS") is a component within an executive department and is thus an "agency" within the meaning of 5 U.S.C. § 551(1) and 5 U.S.C. § 552(f)(1). It has possession and control over the requested records.

## JURISDICTION AND VENUE

7. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) because EFF's principal place of business is located in this district.

## DIVISIONAL ASSIGNMENT

9. Assignment to the San Francisco division is proper pursuant to Local Rules 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in this district and division, where EFF is headquartered. This case arises from a document submitted to a federal agency on behalf of EFF. The document was principally drafted and filed by an EFF employee who resides and works in San Francisco.

**BACKGROUND**

10.    Since January 1, 2026, CMS has used its AI-based WISeR Model to determine medical care prior authorization for Original Medicare beneficiaries in six states. The agency has contracted with private health technology companies to implement this initiative, which purports to reduce waste in healthcare spending.

11.    The WISeR Model increases the use of prior authorization systems, which are commonly employed in Medicare Advantage, but rare in traditional Medicare.[1] Prior authorization requires medical providers to obtain advance approval from a patient's health insurer before delivering certain treatments or services as a condition of coverage.[2] According to an American Medical Association survey, 93 percent of physicians reported that prior authorization results in poorer outcomes for patients. Twenty-four percent reported that prior authorization caused a patient to suffer "a serious adverse event," such as hospitalization, permanent impairment, or death.[3]

12.    Both doctors and lawmakers have raised serious concerns about the WISeR Model. AI-driven prior authorization determinations can create unwarranted—and even discriminatory—delays or denials of necessary medical care.[4] In the past, algorithm-driven

---

[1] While prior authorizations are rarely required in traditional Medicare, they are ubiquitous in Medicare Advantage plans. *See* Jeannie Fuglesten Biniek et al., *Medicare Advantage Insurers Made Nearly 53 Million Prior Authorization Determinations in 2024*, KFF (Jan. 28, 2026), https://www.kff.org/medicare/medicare-advantage-insurers-made-nearly-53-million-prior-authorization-determinations-in-2024/#6e420acb-2fc1-4707-8689-ac19594e493a; *see also* Alexis Cottrill et al., *Examining the Potential Impact of Medicare's New WISeR Model*, KFF (Feb. 10, 2026), https://www.kff.org/medicare/examining-the-potential-impact-of-medicares-new-wiser-model/.

[2] *What is prior authorization?* AMERICAN MED. ASSOC. (July 12, 2022), https://www.ama-assn.org/practice-management/prior-authorization/what-prior-authorization.

[3] *AMA Survey Indicates Prior Authorization Wreaks Havoc on Patient Care*, AMERICAN MED. ASSOC. (June. 18, 2024), https://www.ama-assn.org/press-center/ama-press-releases/ama-survey-indicates-prior-authorization-wreaks-havoc-patient-care.

[4] *See, e.g.*, *AHA Comments on CMS WISeR Model*, AMERICAN HOSP. ASSOC. (Oct. 23, 2025), accessible at https://www.aha.org/lettercomment/2025-10-23-aha-comments-cms-wiser-model; Letter from Ron Wyden, U.S. Senator, Ranking Member, Senate Comm. Fin., et al., to Mehmet Oz, Adm'r, Ctrs. for Medicare & Medicaid Servs. (Sept. 18, 2025), accessible at https://www.finance.senate.gov/imo/media/doc/091825_letter_to_cms_re_wiser_demonstration.pdf.

decision-making systems have cut patients' health benefits without warning, explanation, or due process protections.[5] Multiple courts have ordered state governments to publicly disclose their use of algorithms, audit their systems, and openly account for benefit reductions.[6] AI-driven determinations can also create burdensome administrative barriers between an already overwhelmed healthcare workforce and their patients.[7] In the Medicare Advantage context, several major insurers have come under congressional scrutiny and faced lawsuits over allegations that use of algorithm-based tools led to inappropriate denials of care.[8]

13. The WISeR model also creates perverse financial incentives for contracted companies to deny prior approval against the best interests of patients. Vendors are compensated, in part, on the volume of healthcare services they deny; they are entitled to as much as 20 percent of the associated savings.[9]

14. In just a few months since the launch, harms have already materialized. Physicians and other health care providers have reported unusually high denial rates, delays in care approval, technical failures, communication gaps, and administrative strain.[10] According

[5] *See, e.g., Arkansas Dept. of Human Services v. Ledgerwood*, 530 S.W.3d 336 (Ark. 2017); Lydia X. Z. Brown, *What Happens When Computer Programs Automatically Cut Benefits That Disabled People Rely on to Survive*, CTR. FOR DEMOCRACY AND TECH. (Oct. 21, 2020), https://cdt.org/insights/what-happens-when-computer-programs-automatically-cut-benefits-that-disabled-people-rely-on-to-survive.

[6] *Id.*

[7] *See* note 4, *supra*.

[8] *See, e.g.,* Bob Herman, *Judge Rules Lawsuit over UnitedHealth's AI Care Denials can Move Forward*, STAT (Feb. 13, 2025), https://www.statnews.com/2025/02/13/lawsuit-unitedhealth-artificial-intelligence-care-denials-medicare-advantage-moves-forward/; Casey Ross & Bob Herman, *Humana Used Algorithm in 'Fraudulent Scheme' to Deny Care to Medicare Advantage Patients, Lawsuit Alleges*, STAT (Dec. 12, 2023) https://www.statnews.com/2023/12/12/humana-algorithm-medicare-advantage-patients-lawsuit; U.S. SENATE PERMANENT SUBCOMM. ON INVESTIGATIONS, REFUSAL OF RECOVERY: HOW MEDICARE ADVANTAGE INSURERS HAVE DENIED PATIENTS ACCESS TO POST-ACUTE CARE (Majority Report Oct.17, 2024), accessible at https://www.hsgac.senate.gov/wp-content/uploads/2024.10.17-PSI-Majority-Staff-Report-on-Medicare-Advantage.pdf.

[9] Bridget Early, *Medicare Prior Authorizations Off to a Rocky Start, Providers Say*, MODERN HEALTHCARE (Jan. 29, 2026), https://www.modernhealthcare.com/politics-regulation/mh-cms-wiser-medicare-prior-authorizations/.

[10] Rebecca Adams, *Exclusive: Medicare's AI Experiment Leads to Delayed Care for Some Seniors*, WASHINGTON POST (March 17, 2026),

to a representative of the American Hospital Association, "[a] lot of our fears have been realized."[11]

15.    The WISeR Model's AI systems appear to be denying care at disproportionately high rates. In Texas, for example, officials say that just 62 percent of prior authorization requests have been initially approved under the new Model; once a human reviews them, 84 percent are approved. By comparison, the approval rate for Medicare Advantage requests is more than 92 percent.[12]

16.    Assessing potential harms requires transparency, but the workings of the AI algorithms used in the model are opaque. For example, there is little information about the training data on which they rely. Outdated, incomplete, or biased training data can result in disproportionate denials of care to underserved populations and protected classes. And it is unclear whether the WISeR Model has any safeguards against systemic flaws such as algorithmic bias, privacy violations, and wrongful denials of care.

17.    More transparency is necessary to evaluate potential model shortcomings, inform stakeholders such as patients, providers, and policymakers, and to foster public participation in the ongoing debate on algorithmic decisionmaking in healthcare. In light of the serious risks that the WISeR model could pose, EFF filed its January 29, 2026 FOIA request to better understand its design and implementation.

**Plaintiff EFF's January 29, 2026 FOIA Request**

18.    By letter dated January 29, 2026, EFF submitted a FOIA request to defendant CMS, via electronic mail to the CMS FOIA Service Center. A true and correct copy of this request is attached hereto as Exhibit A. EFF's request sought:

- The Innovation Center Investment Proposal (ICIP) pertaining to WISeR.

---

https://wpintelligence.washingtonpost.com/topics/2026/03/18/exclusive-medicares-ai-experiment-leads-delayed-care-some-seniors/; Megan R. Wilson, *Medicare's AI Bet Hits Turbulence*, WASHINGTON POST (March 20, 2026), https://www.washingtonpost.com/wp-intelligence/health-brief/2026/03/20/medicares-ai-bet-hits-turbulence/.
[11] Note 9, *supra.*
[12] Note 10, *supra.*

- Participant agreements with all WISeR participants, including but not limited to Cohere Health, Inc., Genzeon Corporation, Humata Health, Inc., Innovaccer Inc., Vitrix Health, LLC, and Zyter Inc.

- Any documents describing the "payment methodology" for WISeR participants, which is referenced in paragraph 22 of the CMS.gov webpage titled "WISeR Model Frequently Asked Questions."[13]

- All applications submitted in response to CMI's June 26, 2025 WISeR Request for Applications (RFA).[14] Include responses to all questions outlined in the Application Template on pages 29–35 of the RFA.

- Business associate agreements (BAA), and any other data sharing agreements, between CMS and each WISeR participant. According to page 24 of the RFA, "[a] business associate relationship will be established between CMS and the model participants which will be documented through a valid business associate agreement (BAA) that complies with the requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) Privacy, Security, and Breach Notification Rules (45 C.F.R. Part 160 & Part 164, subparts A through E) (HIPAA Rules)."

- All records reflecting the standardized criteria and vetting process used to select participants. The RFA states on page 10 that "CMS will review completed applications against standardized criteria."

- Any and all records reflecting or containing the testing of participants' technology, including but not limited to, any reports, audits, or similar documentation. According to paragraph 3 of the CMS.gov webpage entitled "WISeR Model

---

[13] "WISeR Model Frequently Asked Questions," U.S. CENTERS FOR MEDICARE & MEDICAID SERVICES (Jan. 13, 2026), https://www.cms.gov/priorities/innovation/files/document/wiser-model-frequently-asked-questions.

[14] "Wasteful and Inappropriate Service Reduction (WISeR) Model Request for Applications (RFA)," U.S. CENTERS FOR MEDICARE & MEDICAID SERVICES, CENTER FOR MEDICARE & MEDICAID INNOVATION (June 26, 2025), accessible at https://www.cms.gov/files/document/wiser-model-rfa.pdf.

Frequently Asked Questions," "[a]s CMS works with WISeR participants and providers and suppliers on the testing of the WISeR participant electronic portals, CMS will monitor turnaround time and compliance with this [72-hour turnaround time] requirement." Testing records should also include any tests for accuracy, bias, explainability, and hallucinations in participant technologies.

- Any and all contracts between CMS and any third party hired for pre-implementation, implementation, audit, evaluation, or post-implementation work on the WISeR model.

- Any reports, data, analyses, or other records reflecting audits, monitoring, and/or evaluation of WISeR model and/or model participants, including any such data and documentation reported by participants. Pages 21–27 of the RFA describe various data to be collected through monitoring, auditing, and evaluations. For example, according to page 21 of the RFA, CMS will "measure process quality using data collected from model participants and other administrative sources (e.g., MACs), such as prior authorization request volume, processing time, and affirmations/non-affirmations; frequency and outcomes of resubmissions; suitability of model participants' documentation; frequency at which providers or suppliers provide and bill non-affirmed items or services and appeal claim denials; and the outcomes of such appeals."

- Any and all documents that reflect user manuals or training materials for WISeR participants' technology.

- Instructions provided by CMS to model participants regarding data sharing and communication with medical providers. According to pages 24–25 of the RFA, "CMS will provide instructions to the model participants as to the specific data that should be collected from providers and suppliers and the data that should be included in communications back to the provider and supplier."

- Documents describing the calculation of participant "quality scores," referenced in paragraph 22 of the CMS.gov webpage titled "WISeR Model Frequently Asked Questions"[15] and page 21 of the RFA.

- All documents produced in response to the FOIA request with Doc ID 092220257050 submitted by Performant Healthcare Solutions on September 22, 2025, as referenced on the September 2025 CMS FOIA Log.[16]

- All documents produced in response to the FOIA with Doc ID 111220257108 submitted by Wharton Law PLLC on November 13, 2025, as referenced on the November 2025 CMS FOIA Log.[17]

19.     In accordance with FOIA, EFF also requested that, where available and appropriate, responsive records should be provided electronically in their native format (such as a CSV file), or as text searchable PDFs, and that the parent/child relationship between records is preserved.

20.     The FOIA request sought fee waivers because EFF "qualifies as a representative of the news media," and the "disclosure of the requested information is in the public interest." *See* 5 U.S.C. §§ 552(a)(4)(A)(i)–(iii). The request included documentation that several federal agencies previously recognized EFF's status as a news media under FOIA. Ex. A, 5–6.

21.     The FOIA request also sought expedited processing because of the urgent need to inform the public about the serious risks of AI-driven prior authorization determinations. The WISeR Model is already in use in multiple states, creating potential harm from possible algorithmic bias, privacy violations, and wrongful denials of medically necessary care. Ex. A, 6–7; *see also* 5 U.S.C. § 552(a)(6)(E); 45 C.F.R. § 5.27(b)(2) (applicable U.S. Department of Health and Human Services regulations on expedited processing). As explained in support of

[15] *See* note 13, *supra*.
[16] "CMS FOIA Log September 2025," U.S. CENTERS FOR MEDICARE & MEDICAID SERVICES, accessible at https://www.cms.gov/files/document/cms-foia-log-september-2025.pdf.
[17] "CMS FOIA Log November 2025," U.S. CENTERS FOR MEDICARE & MEDICAID SERVICES, accessible at https://www.cms.gov/files/document/cms-foia-log-november-2025.pdf.

-8-
COMPLAINT

the news media fee waiver request, EFF is "a person primarily engaged in disseminating information to the public." Ex. A, 5–7.

22.    By electronic mail dated February 14, 2026, CMS acknowledged receipt of EFF's FOIA request and assigned it a "control number" of 021420267002.

23.    To date, CMS has not responded to EFF's FOIA request in substance.

24.    To date, CMS has not released any records responsive to EFF's FOIA request.

25.    As of March 24, 2026, the CMS FOIA Portal showed that CMS's processing of EFF's request remains incomplete and listed the "Projected Date of Response" as "Undetermined."

26.    CMS has exceeded the ten-day statutory deadline for responding to EFF's request for expedited processing.

27.    CMS has exceeded the twenty-working-day statutory deadline for responding in substance to EFF's request.

28.    EFF has exhausted the applicable administrative remedies with respect to its FOIA request to CMS.

29.    CMS has wrongfully withheld the requested records from EFF.

## CAUSES OF ACTION

**Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records**

30.    Plaintiff repeats and realleges paragraphs 1–29.

31.    Defendant CMS has wrongfully withheld agency records requested by EFF by failing to comply with the statutory time limit for the processing of FOIA requests.

32.    EFF has exhausted the applicable administrative remedies with respect to defendant's wrongful withholding of the requested records.

33.    EFF is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

## REQUESTED RELIEF

WHEREFORE, Plaintiff EFF prays that this Court:

1.    Order Defendant to process immediately the requested records in their entirety;

2.    Order Defendant to disclose the requested records in their entirety and make copies available to plaintiff;

3.    Order Defendant to waive all fees associated with the search, processing, duplication, and release of the requested records;

4.    Provide for expeditious proceedings in this action;

5.    Award Plaintiff its costs and reasonable attorney's fees incurred in this action; and

6.    Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: March 25, 2026                By:  */s/ Victoria J. Noble*
                                          Victoria J. Noble

                                     Kit Walsh
                                     ELECTRONIC FRONTIER
                                     FOUNDATION
                                     815 Eddy Street
                                     San Francisco, CA  94109
                                     tori@eff.org
                                     kit@eff.org

                                     Attorneys for Plaintiff
                                     ELECTRONIC FRONTIER FOUNDATION

-10-
COMPLAINT