# Exhibit A



**Victoria Noble** | Staff Attorney
tori@eff.org | +1.415.436.9333 x141

January 29, 2026

**VIA EMAIL**
U.S. Centers for Medicare & Medicaid Services
Freedom of Information Act Office
7500 Security Boulevard, Stop C5-11-06
Baltimore, MD 21244
FOIA_Request@cms.hhs.gov

> **Re:    Freedom of Information Act Request, Fee Waiver Request, and Request for Expedited Processing**

To Whom It May Concern:

This letter is a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, submitted on behalf of the Electronic Frontier Foundation (EFF). We make this request to the U.S. Centers for Medicare & Medicaid Services (CMS) as part of an ongoing effort to obtain government documents and make them widely available to the public.

This request concerns the Center for Medicare and Medicaid Innovation's Wasteful and Inappropriate Service Reduction (WISeR) Model.[1] The WISeR model implemented new prior authorization requirements for Original Medicare beneficiaries in six states, beginning on January 1, 2026.[2] Companies selected as WISeR participants will use "enhanced technologies," such as artificial intelligence (AI), to review prior authorization requests.[3]

---

[1] U.S. Centers for Medicare & Medicaid Services, "WISeR (Wasteful and Inappropriate Service Reduction) Model," (Dec. 23, 2025) https://www.cms.gov/priorities/innovation/innovation-models/wiser.

[2] "Medicare Program; Implementation of Prior Authorization for Select Services for the Wasteful and Inappropriate Services Reduction (WISeR) Model," 90 F.R. 28749, 28750–28751, (July 1, 2025), available at https://www.federalregister.gov/documents/2025/07/01/2025-12195/medicare-program-implementation-of-prior-authorization-for-select-services-for-the-wasteful-and.

[3] U.S. Centers for Medicare & Medicaid Services, Center for Medicare and Medicaid Innovation, "Wasteful and Inappropriate Service Reduction (WISeR) Model Request for Applications

FOIA Request
January 29, 2026
Page 2 of 8

The WISeR model aims to use AI-driven prior authorization determinations to reduce waste, fraud, and abuse, but could harm patients by subjecting them to unwarranted—and even discriminatory—delays or denials of medically necessary care.[4] Doctors and lawmakers have raised serious concerns about the WISeR model, including that it incentivizes companies to deny care and that it lacks meaningful safeguards against algorithmic bias, privacy violations, or wrongful denials of care.[5]

## **Requested Records**

We request the following records regarding the Center for Medicare and Medicaid Innovation's Wasteful and Inappropriate Service Reduction (WISeR) Model:

1.    The Innovation Center Investment Proposal (ICIP) pertaining to WISeR.

---

(RFA)," (June 26, 2025), https://www.cms.gov/files/document/wiser-model-rfa.pdf; U.S. Centers for Medicare & Medicaid Services, Center for Medicare and Medicaid Innovation, "Wasteful and Inappropriate Service Reduction (WISeR) Model Provider and Supplier Guide, Version 3.0," (Dec. 23, 2025), https://www.cms.gov/priorities/innovation/files/wiser-provider-supplier-guide.pdf.

[4] Lauren Sausser and Darius Tahir, "AI Will Soon Have a Say in Approving or Denying Medicare Treatments," *KFF Health News* (Sept. 25, 2025), https://kffhealthnews.org/news/article/ai-medicare-prior-authorization-trump-pilot-program-wiser/; Donald M. Berwick and Andrea Ducas, "Plans to Test Prior Authorization in Traditional Medicare Are Deeply Troubling," *STAT* (July 25, 2025), https://www.statnews.com/2025/07/25/medicare-advantage-prior-authorization-cms-innovation-center-wiser-project/.

[5] Letter from American Medical Association CEO & Executive Vice President John Whyte to CMS Innovation Center Director Abe Sutton (July 16, 2025), available at https://searchlf.ama-assn.org/letter/documentDownload?uri=/unstructured/binary/letter/LETTERS/lfcts.zip/2025-7-16-Letter-to-Sutton-re-WISer-Model-v2.pdf; Letter from Senator Ron Wyden, et al. to CMS Administrator Mehmet Oz and CMS Innovation Center Director Abe Sutton (Sept. 18, 2025), available at https://www.finance.senate.gov/imo/media/doc/091825_letter_to_cms_re_wiser_demonstration.pdf; Letter from Congresswoman Alexandria Ocasio-Cortez, et al. to CMS Administrator Mehmet Oz and CMS Innovation Center Director Abe Sutton (July 31, 2025), available at https://ocasio-cortez.house.gov/sites/evo-subsites/ocasio-cortez.house.gov/files/evo-media-document/letter-to-cms-on-wiser.pdf.

FOIA Request
January 29, 2026
Page 3 of 8

2. Participant agreements with all WISeR participants, including but not limited to Cohere Health, Inc., Genzeon Corporation, Humata Health, Inc., Innovaccer Inc., Vitrix Health, LLC, and Zyter Inc.

3. Any documents describing the "payment methodology" for WISeR participants, which is referenced in paragraph 22 of the CMS.gov webpage titled "WISeR Model Frequently Asked Questions."[6]

4. All applications submitted in response to CMI's June 26, 2025 WISeR Request for Applications (RFA).[7] Include responses to all questions outlined in the Application Template on pages 29–35 of the RFA.

5. Business associate agreements (BAA), and any other data sharing agreements, between CMS and each WISeR participant. According to page 24 of the RFA, "[a] business associate relationship will be established between CMS and the model participants which will be documented through a valid business associate agreement (BAA) that complies with the requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) Privacy, Security, and Breach Notification Rules (45 C.F.R. Part 160 & Part 164, subparts A through E) (HIPAA Rules)."

6. All records reflecting the standardized criteria and vetting process used to select participants. The RFA states on page 10 that "CMS will review completed applications against standardized criteria."

7. Any and all records reflecting or containing the testing of participants' teechnology, including but not limited to, any reports, audits, or similar documentation. According to paragraph 3 of the CMS.gov webpage entitled "WISeR Model Frequently Asked Questions," "[a]s CMS works with WISeR participants and providers and suppliers on the testing of the WISeR participant electronic portals, CMS will monitor turnaround time and compliance with this [72-hour turnaround time] requirement." Testing

---

[6] U.S. Centers for Medicare & Medicaid Services, "WISeR Model Frequently Asked Questions," (Jan. 13, 2026) https://www.cms.gov/priorities/innovation/files/document/wiser-model-frequently-asked-questions.

[7] U.S. Centers for Medicare & Medicaid Services, Center for Medicare and Medicaid Innovation, "Wasteful and Inappropriate Service Reduction (WISeR) Model Request for Applications (RFA)," (June 26, 2025), https://www.cms.gov/files/document/wiser-model-rfa.pdf.

FOIA Request
January 29, 2026
Page 4 of 8

records should also include any tests for accuracy, bias, explainability, and hallucinations in participant technologies.

8. Any and all contracts between CMS and any third party hired for pre-implementation, implementation, audit, evaluation, or post-implementation work on the WISeR model.

9. Any reports, data, analyses, or other records reflecting audits, monitoring, and/or evaluation of WISeR model and/or model participants, including any such data and documentation reported by participants. Pages 21–27 of the RFA describe various data to be collected through monitoring, auditing, and evaluations. For example, according to page 21 of the RFA, CMS will "measure process quality using data collected from model participants and other administrative sources (e.g., MACs), such as prior authorization request volume, processing time, and affirmations/non-affirmations; frequency and outcomes of resubmissions; suitability of model participants' documentation; frequency at which providers or suppliers provide and bill non-affirmed items or services and appeal claim denials; and the outcomes of such appeals."

10. Any and all documents that reflect user manuals or training materials for WISeR participants' technology.

11. Instructions provided by CMS to model participants regarding data sharing and communication with medical providers. According to pages 24–25 of the RFA, "CMS will provide instructions to the model participants as to the specific data that should be collected from providers and suppliers and the data that should be included in communications back to the provider and supplier."

12. Documents describing the calcuation of participant "quality scores," referenced in paragraph 22 of the CMS.gov webpage titled "WISeR Model Frequently Asked Questions"[8] and page 21 of the RFA.

---

[8] U.S. Centers for Medicare & Medicaid Services, "WISeR Model Frequently Asked Questions," (Jan. 13, 2026) https://www.cms.gov/priorities/innovation/files/document/wiser-model-frequently-asked-questions.

FOIA Request
January 29, 2026
Page 5 of 8

13. All documents produced in response to the FOIA request with Doc ID 092220257050 submitted by Performant Healthcare Solutions on September 22, 2025, as referenced on the September 2025 CMS FOIA Log.[9]

14. All documents produced in response to the FOIA with Doc ID 111220257108 submitted by Wharton Law PLLC on November 13, 2025, as referenced on the November 2025 CMS FOIA Log.[10]

In accordance with FOIA, we request that where available and appropriate, responsive records are provided electronically in their native format (such as a CSV file), or as text-searchable PDFs, and that the parent/child relationship between records is preserved.

## **News Media Fee Waiver**

EFF requests that it not be charged search or review fees because it qualifies as a representative of the news media, pursuant to FOIA and the applicable federal regulations. The Department of Homeland Security and other federal agencies have recognized EFF's news media status under FOIA.

EFF maintains a frequently visited web site that reports on the latest developments of, and provides in-depth analysis on, a variety of civil liberties and intellectual property issues. EFF posts documents received in response to FOIA requests here, along with commentary. See: https://www.eff.org/issues/foia.

EFF's newsletter, EFFector, has been published since 1990 and is now sent to more than 580,000 subscribers. An archive of past EFFectors is available at https://www.eff.org/effector. EFF also maintains a popular blog, Deeplinks, and has produced a series of white papers on diverse issues such as online consumer privacy, free speech, government surveillance and intellectual property. EFF writing and research related to the Freedom of Information Act and "Sunshine Week" is published annually by more than a dozen local newspapers nationwide.

---

[9] CMS FOIA Log September 2025, available at https://www.cms.gov/files/document/cms-foia-log-september-2025.pdf.
[10] CMS FOIA Log November 2025, available at https://www.cms.gov/files/document/cms-foia-log-november-2025.pdf.

815 Eddy Steet, San Francisco, CA 94109 USA    email tori@eff.org    phone +1.415.436.9333 x141    eff.org

FOIA Request
January 29, 2026
Page 6 of 8

In 2018 EFF collaborated on and contributed to the non-fiction essay collection "The End of Trust," published by McSweeney's, and since 2020, EFF has produced the award-winning podcast "How to Fix the Internet."

Due to these extensive publication activities, EFF is a "representative of the news media" under FOIA and agency regulations.

## Public Interest Fee Waiver

EFF is entitled to a waiver of search and duplication fees because disclosure of the requested information is in the public interest within the meaning of FOIA. EFF will make the information obtained under the FOIA broadly available to the public and the media through its website, which, as described above, highlights developments concerning privacy and civil liberties issues. Because EFF is a representative of the news media, EFF's request presumptively satisfies this criterion.

Moreover, EFF's request will shed light on government activities by providing greater, much needed, transparency regarding the WISeR model, which has prompted widespread controversy. Lawmakers, experts, and members of the public have expressed concerns that the WISeR model's use of artifical intelligence in prior authorization decisions may harm patients by unfairly delaying and denying medical care of care, particularly because there is limited transparency into the details of technological and regulatory safeguards, participant agreements, and financial incentives to deny care.[11]

Finally, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. EFF is a 501(c)(3) nonprofit organization, and will not derive commercial benefit from the information at issue here.

## Expedited Processing

EFF's request for expedited processing should be granted because it pertains to information about which there is "an urgent need to inform the public about an

---

[11] *See, e.g.*, Ganny Belloni, "Medicare AI Pilot Program's Lack of Details Worries Critics," *Bloomberg Law* (Jan. 26, 2026), https://news.bloomberglaw.com/ip-law/medicare-ai-pilot-programs-lack-of-details-worries-critics.

815 Eddy Steet, San Francisco, CA 94109 USA    email tori@eff.org    phone +1.415.436.9333 x141    eff.org

FOIA Request
January 29, 2026
Page 7 of 8

actual or alleged Federal Government activity," and it has been "made by a person primarily engaged in disseminating information to the public." *See* 45 C.F.R. § 527(b)(2). The information we request easily satisfies this standard.

The federal government activity involved here—the experimentation with AI-driven prior authorization determinations—creates serious risks to Medicare patients stemming from possible algorithmic bias, privacy violations, and wrongful denials of medically necessary care. Artificial intelligence systems used to make prior authorization denials have been found to deny care at exceptionally high rates—in some cases, up to 16 times more often than is typical.[12] This causes real harm. According to a survey from the American Medical Association, 94 percent of physicians reported that prior authorization results in poor outcomes for patients, and 29 percent reported that prior authorization caused a patient in their care to suffer "a serious adverse event," such as hospitalization, permanent impairment, or death.[13] Moreover, these systems disproportionately harm patients from marginalized groups.[14]

According to experts, greater transparency is necessary to help prevent AI-driven prior authorization determinations from harming patients.[15] Given that these systems are already in use in multiple states, there is an urgent need for better insight into these systems to protect patients from serious harm. The information we request will further that aim. Additionally, the requested information will also help the public fully participate in the ongoing debate over the appropriate use of algorithmic decisionmaking in the context of health insurance. Thus, delay in processing this FOIA request could harm patients and inhibit the public's ability to fully analyze and debate the implications of this technology.

---

[12] U.S. Senate Permanent Subcommittee on Investigations, "Refusal of Recovery: How Medicare Advantage Insurers Have Denied Patients Access to Post-Accute Care," (Oct. 17, 2024), https://www.hsgac.senate.gov/wp-content/uploads/2024.10.17-PSI-Majority-Staff-Report-on-Medicare-Advantage.pdf (Majority Staff Report).

[13] American Medical Association, "Physicians Concerned AI Increases Prior Authorization Denials" (Feb. 24, 2025), https://www.ama-assn.org/press-center/ama-press-releases/physicians-concerned-ai-increases-prior-authorization-denials.

[14] Michelle M. Mello and Sherri Rose, "Denial–Artifical Intelligence Tools and Healthcare Insurance Coverage Decisions," *JAMA Health Forum* (Mar. 7, 2024), https://jamanetwork.com/journals/jama-health-forum/fullarticle/2816204.

[15] Michelle M. Mello, et al., "The AI Arms Race in Health Insurance Utilization Review: Promises of Efficiency and Risks of Supercharged Flaws," *Health Affairs* (Jan. 2026), https://www.healthaffairs.org/doi/10.1377/hlthaff.2025.00897.

815 Eddy Steet, San Francisco, CA 94109 USA    email tori@eff.org    phone +1.415.436.9333 x141    eff.org

FOIA Request
January 29, 2026
Page 8 of 8


Further, as explained above in support of our request for a news media fee waiver, EFF is "primarily engaged in disseminating information."

This statement is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As the FOIA provides, I will anticipate a determination with respect to EFF's expedited processing request within 10 calendar days. I will further expect disclosure of requested records within 20 working days. If you have any questions or concerns, do not hesitate to contact me by phone at 415-436-9333 ext. 141 or by email at tori@eff.org.


Sincerely,

Victoria Noble
Staff Attorney
Electronic Frontier Foundation